USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/30/2022_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LADONNA JACKSON-LIPSCOMB,

                                      Plaintiff,

          -against-

CITY OF NEW YORK ET AL.,
                                      Defendants.

17-CV-10093 (ALC)
**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff LaDonna Jackson-Lipscomb brings this action against Defendants the City of New York ("City"), Steven Banks, Darlene Lee, Lisa Fitzpatrick, Arnoldo Pinol, Dexter Price, Francisco Sosa, and Dawne McBarnette (collectively "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), the New York State Human Rights Law, New York Exec. Law § 296 *et seq.* ("NYSHRL") the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a) *et seq.* ("NYCHRL"), 42 U.S.C. § 1983 (Section 1983), *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the First Amendment of the U.S. Constitution. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 198. For the reasons that follow, Defendants' motion is hereby **GRANTED.**

**BACKGROUND[1]**

Plaintiff is an African American woman who has been employed by the City from October 1990 to the present. Plaintiff holds the civil service title of Principal Administrative Associate, Level III (PAA III) in the New York Human Resource Administration's ("HRA") Supplemental

---

[1] The following factual summary relies upon the parties' submissions in support of and in opposition to Defendants' summary judgment motion, including Defendants' Rule 56.1 Statement (Defs.' 56.1 Statement), ECF No. 201, and Plaintiff's Rule 56.1 Statement (Pl.'s 56.1 Statement), ECF No. 207. Citations to the Rule 56.1 Statements incorporate by reference the documents cited therein.

Nutrition Assistance Program Unit ("SNAP"). From March 2015 until March 2020, Plaintiff served as Deputy Center Director for SNAP Site 13 ("SNAP 13"), which is in the Washington Heights neighborhood of Manhattan. According to Plaintiff, in March 2020, Plaintiff's title changed to "Supervisor." Prior to working at SNAP 13, Plaintiff was employed in HRA's Office of Child Support Enforcement ("OCSE").

On October 26, 2012, Plaintiff filed with HRA's Equal Employment Opportunity Office ("HRA EEO") an Equal Employment Opportunity ("EEO") gender discrimination complaint against her supervisor, Defendant Barnette. On June 5, 2013, HRA EEO found that Plaintiff's complaint was unsubstantiated. On February 4, 2015, Plaintiff filed an additional EEO complaint against Barnette for retaliation and discrimination on the basis of race; HRA EEO closed this case on April 1, 2015 as Plaintiff notified HRA EEO that she had decided to pursue these claims before the New York State Division of Human Rights ("NYSDHR").

According to Plaintiff, she received no HRA disciplinary charges between 1990 and 2014. On October 23, 2014, Plaintiff submitted a witness statement in support of an OSCE staff member facing disciplinary charges. On October 20, 2014, HRA charged Plaintiff with disciplinary charges containing five specifications for insubordination and failure to act courteously with her colleagues, citing, among other things, Plaintiff's alleged behavior towards Barnette, in violation of HRA's Code of Conduct. Plaintiff was served with the charges on October 28, 2014. HRA upheld the five specifications against Plaintiff and recommended a ten-day suspension. The charges were ultimately withdrawn and the case was closed.

In late 2014 Plaintiff circulated an Agency for Investigative Training ("AFIT") proposal "for staff that [was] suffering discrimination" and a related petition. Defs.' 56.1 Statement ¶ 49. Per the AFIT proposal, on October 30, 2014, Plaintiff sent an email to Defendant Banks, HRA

Commissioner, regarding a proposal for "an intervention for workers suffering from Psychological Abuse." *Id*. ¶ 52. On January 26, 2015, Plaintiff emailed HRA Chief Operating Officer Matthew Brune and HRA Chief Program Officer Lisa Fitzpatrick about her previous submission of a "NYC HRA OCSE Psychological Abuse of Subordinates in the Work Place, AFIT Proposal, and a Petition (Workplace Violence Prevention)." *Id*. ¶ 53.

In January 2015, Plaintiff requested to be transferred from OCSE. On March 16, 2015, Plaintiff was transferred to SNAP 13. Plaintiff alleges that HRA provided her with only one option for transfer, Snap 13, which was located far from her home and which was known for being hostile to African Americans.  Between 2015 and 2016, HRA offered to transfer Plaintiff to a SNAP site located closer to her home. Plaintiff declined the offer. Plaintiff alleges she declined because she was not properly trained at SNAP 13, which she feared would result in an inability to conduct her job at the new site and provide Defendants with a justification for her termination.

Plaintiff was the only PAA III and Deputy Center Director at SNAP 13, and she supervised all the PAA II personnel including Defendant Pinol, a Hispanic American. In July 2015, Defendant Sosa, a Hispanic American assumed the role of SNAP 13 Center Director and Plaintiff's supervisor. On August 11, 2014, Defendant Lee became the Deputy Regional Manager of the Bronx and Manhattan SNAP centers and Plaintiff's indirect supervisor. Defendant Price was the Regional Manager of the Bronx and Manhattan SNAP centers.

Pinol was removed from Plaintiff's supervision and placed under Sosa's supervision. Defendants contend that Pinol was removed from Plaintiff's supervision due to personality conflicts; Plaintiff alleges that discriminatory animus motivated the disputes between Plaintiff and Pinol. Plaintiff claims that Sosa only permitted Plaintiff to manage African American staff members and Plaintiff did not manage any Hispanic staff members by the time Sosa left his

3

position at SNAP 13. Defendants denies that Sosa only authorized Plaintiff to approve the time of African American staff.

Additionally, according to Defendants, Plaintiff, who does not speak Spanish, instructed Spanish-speaking SNAP 13 staff members to refrain from speaking Spanish at work. Sosa informed Plaintiff that he would not tell SNAP 13 staff to cease speaking Spanish among themselves at work if they were discussing non-work matters. Plaintiff alleges that the Spanish-speaking staff at SNAP 13 would communicate in Spanish about work matters while in Plaintiff's presence and, further, that Sosa encouraged them to do so in order to isolate the staff who did not speak Spanish.

Plaintiff also alleges that Sosa intentionally excluded Plaintiff from certain work-related email exchanges. According to Defendants, Sosa was not required to include Plaintiff on emails with his direct reports and he would avoid including her on certain emails because she would reply in an argumentative manner. While Defendants state that Sosa would forward Plaintiff emails when requested, Plaintiff alleges that Sosa only responded to her emails when she included Lee and Price on the email. Otherwise, Sosa would not respond to her emails requesting communication or supervision.

Plaintiff also alleges that in January 2016 she was excluded from meetings with Lee and Price. Defendants refute these allegations. In January 2016, Plaintiff's flextime privileges were removed. The flextime policy allowed employees to report to work within one hour of their official start time without receiving any penalty. According to Defendants, Plaintiff's privileges were revoked because she frequently violated the time and leave policies. After her flextime privileges were revoked, Plaintiff was the only SNAP 13 staff member who did not have flextime privileges.

Plaintiff contends Defendants revoked her privileges in retaliation. Plaintiff's flextime privileges were re-instated under a subsequent SNAP 13 Center Director.

Defendants contend that Plaintiff was provided with training opportunities, including opportunities to train at different SNAP centers and under different supervision. Plaintiff alleges that while she was offered certain trainings, she was not provided training she requested. Further, the training she did receive was not applicable to her responsibilities.

Plaintiff also alleges that Sosa would approve vacation requests in a racially disparate manner, approving the requests of Pinol and Hispanic staff who were junior to Plaintiff while denying Plaintiff's request. On January 22, 2016, after Sosa granted Pinol a vacation day and denied the day to Plaintiff, Plaintiff accused Sosa of acting in a racially-prejudiced manner. Plaintiff also relayed these concerns to Lee and Price. Plaintiff alleges that no action was taken to investigate her claims. On January 27, 2016, Plaintiff filed a complaint with HRA EEO. On January 28, 2016, Sosa removed Plaintiff's authority to approve Pinol's timesheets, assuming that responsibility himself.

During her employment at SNAP 13, Plaintiff received three sets of disciplinary charges charging her with insubordination and abuse of her position. Plaintiff alleges that Defendants did not abide by their progressive disciplinary policy when bringing these charges against Plaintiff. The first set of charges, received on February 3, 2016, involved six specifications. All specifications were substantiated, and a penalty of a ten-day suspension was recommended. Plaintiff appealed the determination, and her appeal resulted in a reduced penalty of a three-day suspension without pay and the dismissal of five of the six charges. Plaintiff appealed the three-day penalty and the substantiation of the one remaining charge. On August 12, 2016, Plaintiff was served with a second set of disciplinary charges, all of which were substantiated and Plaintiff

received a penalty of a 15-day suspension. Plaintiff appealed this determination; upon appeal, the charges and penalty were upheld. Her appeal of this determination remains pending as of the filing of this motion. On November 25, 2016, Plaintiff was charged with sending a SNAP client's information to her personal e-mail address, for which she served a 20-day suspension without pay.

Plaintiff filed a United States Equal Employment Opportunity Commission ("EEOC") charge on March 1, 2016, which she amended on December 19, 2016. On January 25, 2017, Plaintiff filed a charge of discrimination against the City with the NYSDHR. On September 26, 2017, the EEOC issued Plaintiff a right to sue letter.

## LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "There is no issue of material fact where the facts are irrelevant to the disposition of the matter." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.,* 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York,* 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will

be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."
*Id.* (quoting *Anderson,* 477 U.S. at 252).

Title VII, Section 1983, NYSHRL, and NYCHRL discrimination, retaliation, and hostile
work environment claims are analyzed under the three-part burden shifting scheme the Supreme
Court set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Tolbert v. Smith*,
790 F.3d 427, 434 (2d Cir. 2015) (stating that Title VII and NYSHRL claims are governed by the
*McDonnell Douglas* standard); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (stating
that Title VII claims and claims for race discrimination under Section 1983 are analyzed under the
*McDonnell Douglas* standard).

Under *McDonnell Douglas,* the plaintiff bears an initial burden of "proving by the
preponderance of the evidence a prima facie case of discrimination." *Tex. Dep't of Cmty. Affairs
v. Burdine,* 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case of
discrimination or retaliation, a presumption of discrimination or retaliation arises and the burden
shifts to the defendant to offer a legitimate non-discriminatory or non-retaliatory reason for the
adverse action. *Id.* at 253. If the defendant is able to offer a legitimate basis for the decision,
without the presumption of discrimination, the plaintiff must then establish that the proffered
nondiscriminatory reason was pretextual and that the defendant's act was at least partially
motivated by discrimination. *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 93–94 (2d Cir.
2001); *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 123 (2d Cir. 2004)
("[T]o defeat summary judgment within the *McDonnell Douglas* framework . . . the plaintiff is not
required to show that the employer's proffered reasons were false or played no role in the

employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.")(internal quotation marks and citations omitted).[2]

## DISCUSSION

### I.    Timeliness

As an initial matter, the Court considers to what degree Plaintiff's Title VII, Section 1983, NYSHRL and NYCHRL claims are time barred.

#### a.    Title VII

Defendants argue that Plaintiff's Title VII claims earlier than 300 days before her filing a complaint with the EEOC are untimely. "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 days or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)).

Defendants represent the date of Plaintiff's EEOC complaint as January 25, 2017. Defs.' Br. 3. Plaintiff counters that Defendants have narrowed the window for liability as her EEOC charge was first filed on March 1, 2016, amended on December 19, 2016, and then "merged" with her charge filed with the SDHR on January 25, 2017. *See* Hagan Decl. Exs. 130, 131, 132, ECF Nos. 210-30, 210-31, 210-32. According to Plaintiff's timeline, the relevant date for calculating the time frame for liability would be March 1, 2016. The Court agrees. In *Vega v. Hempstead*

---

[2] On August 19, 2019, the New York legislature amended the NYSHRL such that the standard for NYSHRL claims is now closer to the more liberal NYCHRL standard. "However, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019." *Syeed v. Bloomberg L.P.*, --- F.Supp.3d ---, No. 20-CV-7464 (GHW), 2021 WL 4952486, at *18 (S.D.N.Y. Oct. 25, 2021) (internal quotation marks and citations omitted). Plaintiff's claims accrued prior to October 11, 2019 and, therefore, the previous NYSHRL standard applies.

*Union Free Sch. Dist.*, the plaintiff filed and then twice amended his EEOC charge, and the Court determined the applicable timeframe for the plaintiff's Title VII claims based on the initial filing date of the EEOC charge. 801 F.3d at 77, 79. Accordingly, the Court uses the date of Plaintiff's initial filing to determine the timeliness of Plaintiff's Title VII claims. Here, Plaintiff first filed her EEOC claim on March 1, 2016. Under the 300-day rule, discriminatory acts or acts of retaliation occurring before May 6, 2015 are time barred.

Claims occurring before May 6, 2015 may still be considered under the continuing violation doctrine. Under this doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (internal quotation marks and citations ). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. Indeed, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[A] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period.*") (internal quotation marks and citations omitted).

Here, Plaintiff has alleged at least one act related to her hostile environment claim that falls within the time period. Accordingly, the Court considers Plaintiff's discrimination claims that

occurred before May 6, 2015 for purposes of her hostile work environment claim because she sufficiently alleges a "continuing violation" of her rights.

### b. Section 1983, NYSHRL, and NYCHRL Claims

Claims brought under Section 1983, NYSHRL, and NYCHRL are subject to a three-year statute of limitations. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011). Plaintiff initiated this action on December 26, 2017. The limitations period for NYSHRL and NYCHRL claims are tolled for the period between when an EEOC charge is filed and the right-to-sue letter is filed. *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016). The EEOC charge was filed on March 1, 2016 and the right-to-sue letter was issued 574 days later on September 26, 2017. Therefore, NYSHRL and NYCHRL claims occurring before May 31, 2013 are barred, and Section 1983 claims occurring before December 26, 2014 are barred.

## II.  National Origin Claims

As a preliminary matter, Plaintiff's claims based on national origin are dismissed as abandoned. Plaintiff's brief fails to defend her national origin claims. "[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014).

## III.  Discrimination and Hostile Work Environment Claims

### a. Title VII, Section 1983, and NYSHRL Discrimination Claims

To establish a *prima facie* case of discrimination based on race under Title VII, Section 1983, and NYSHRL, a plaintiff must show that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega*, 801 F.3d at 83 (internal quotation marks and citations omitted). Defendants do not challenge that Plaintiff is a member of a protected

class or that she is qualified for her position. However, they dispute that she suffered adverse employment actions and whether these actions were discriminatory.

Plaintiff only addresses alleged adverse employment actions that occurred while she was employed at SNAP 13. *See* Pl.'s Br. 23–24. The adverse employment actions include that (1) she was not allowed to supervise Hispanic staff members; (2) she was excluded from meetings and emails; (3) she was denied training; (4) she received disciplinary charges; (5) she was excluded from conversations in Spanish among colleagues; (6) and she was docked pay.

These claims fail on the fourth prong. A plaintiff can raise an inference of discrimination by showing that the employer subjected her to disparate treatment, "treat[ing] him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). The plaintiff must demonstrate that she is "similarly situated in all material respects" to the comparator. *Id.* (internal quotation marks and citations omitted). This comparison includes whether the comparator is subject to the same performance evaluations, supervision structure, and standards, and whether the comparator engaged in similar conduct that went undisciplined. *Id*; *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

Here, Plaintiff has identified only one coworker, Pinol, who was allegedly similarly situated to Plaintiff. However, as Plaintiff concedes, Plaintiff held a different position than Pinol. They had different civil service titles—Pinol was a PAA II while Plaintiff was a PAA III—and different role titles as Plaintiff was the only Deputy Center Director at SNAP 13. *See Canales-Jacobs v. New York State Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (denying discrimination claim where comparator had a different job than plaintiff).

Accordingly, Plaintiff's Title VII, Section 1983, and NYSHRL discrimination claims fail.

   **a.  NYCHRL Discrimination Claim**

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citations omitted). "[T]he plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Id*. at 110 n.8. Employers then may offer evidence of "legitimate, non-discriminatory motives," to show that "discrimination play[ed] *no* role in its actions." *Id*. Still, "petty slights or trivial inconveniences are not actionable" under the NYCHRL. *Ahmad v. New York City Health & Hosps. Corp*., No. 20-cv-675 (PAE), 2021 WL 1225875, at *29 (S.D.N.Y. Mar. 31, 2021) (internal quotation marks and citations omitted). Further, "the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110. "It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part *because of* her [race]." *Id*. (internal quotation marks and citations omitted).

Plaintiff has failed to satisfy her burden here for the reasons stated above with respect to the discrimination claims under Title VII, Section 1983, and NYSHRL. Namely, Plaintiff cannot have been "treated less well" then a peer because she has no comparator at SNAP 13. Further, Defendants have offered "legitimate, non-discriminatory" motives for their allegedly wrongful actions such that they have proven that discrimination played no role.

Thus, summary judgement is granted on Plaintiff's NYCHRL discrimination claim.

### b.  Title VII, Section 1983, and NYSHRL Hostile Work Environment Claims

To prevail on a claim of a hostile work environment, a plaintiff must show that because of her membership in a protected class her workplace was "permeated with discriminatory

12

intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). In determining whether an environment is "hostile" or "abusive," courts analyze the totality of the circumstances, including: "[1] the frequency of the conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance; and [4] whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 23.

Based on the record presented, Plaintiff has not met her burden. With respect to her hostile work environment claim, Plaintiff alleges that (1) Hispanic staff communicated only in Spanish to one another; (2) Sosa told Hispanic staff that Plaintiff would be at SNAP 13 only "until a matter was settled;" (3) Plaintiff overhead Hispanic staff talking about Plaintiff and in those conversations, Sosa would tell staff that he was "working" on Plaintiff's departure from SNAP 13; (4) Sosa "laughed in her face" when Plaintiff told Sosa "the hearings were killing her;" (5) Pinol once held a meeting with two Hispanic staff members and African American staff were not included in the meeting; (6) Plaintiff was permitted to write up an African American supervisee, but experienced retaliation when she attempted to write up Hispanic supervisees; and (7) Plaintiff was only allowed to supervise African American staff members. None of these allegations amount to severe or pervasive conduct that constitutes a hostile work environment.

Accordingly, Plaintiff's hostile work environment claim under Title VII, Section 1983, and NYSHRL must be dismissed.

### c. NYCHRL Hostile Work Environment Claim

"The standard for maintaining a hostile work environment claim is lower under the NYCHRL." *Bermudez*, 783 F. Supp. 2d at 579. "The NYCHRL imposes liability for harassing conduct that does not qualify as 'severe or pervasive.'" *Id.* (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (N.Y. App. Div. 2009)). "Instead, a focus on unequal treatment based on [race] . . . is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute." *Mihalik,* 715 F.3d at 114. "Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard." *Nguedi v. Fed. Rsrv. Bank of New York*, No. 16-cv-636 (GHW), 2019 WL 1083966, at *10 (S.D.N.Y. Mar. 7, 2019), *aff'd*, 813 F. App'x 616 (2d Cir. 2020) (internal quotation marks and citations omitted).

Even under this less stringent standard, the actions alleged cannot pass muster. Even if not severe or pervasive, the conduct alleged does not constitute harassing conduct. Thus, the hostile work environment claim under NYCHRL fails.

### IV.   Retaliation Claims

### a.   Title VII, Section 1983, and NYSHRL Retaliation Claims

To state a *prima facie* claim for retaliation under Title VII, Section 1983, and the NYSHRL, a plaintiff must demonstrate that: (1) she participated in a protected activity; (2) the defendant was aware of her protected activity; (3) she suffered an "adverse employment action;" and (4) there is "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks and

citations omitted). Proof of a causal connection requires a plaintiff to show that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff alleges the following conduct as protected activity: (1) circulating her AFIT proposal and petition; (2) filing her October 26, 2012 HRA EEO complaint; (3) filing her December 3, 2013 HRA EEO complaint; (3) filing her February 4, 2015 HRA EEO complaint; (4) filing her March 1, 2016 EEOC charge; and (5) filing her January 25, 2017 SDHR charge. Pl.'s Br. 4–5. Plaintiff offers only her transfer to SNAP 13 as the adverse employment action. *Id.* at 5.[3]

In *Richardson v. New York State Department of Correctional Services*, the Second Circuit acknowledged that a transfer may, in certain circumstances, serve as an adverse employment action, even if the plaintiff requested the transfer. *Richardson v. N.Y. State Dep't of Corr. Servs.,* 180 F.3d 426, 444 n.4 (2d Cir. 1999), *abrogated on other grounds, Kessler v. Westchester Cnty Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006). However, in *Richardson*, there was evidence that a better position was available at the time of the plaintiff's transfer. "In the absence of such evidence, other courts have routinely granted or affirmed grants of summary judgment in favor of defendants." *Carmellino v. Dist. 20 of New York City Dep't of Educ.*, No. 03-cv-5942(PKC), 2006 WL 2583019, at *39 (S.D.N.Y. Sept. 6, 2006).

Here, the parties agree that Plaintiff requested to be transferred. Plaintiff has not come forward with any evidence that another position existed when she was transferred to SNAP 13. Plaintiff does not argue that another position was available at the time, and rather, her brief

---

[3] Plaintiff mentions that a retaliatory hostile work environment can serve as the adverse employment action. Pl.'s Br. at 5; s*ee Marquez v. City of New York*, No. 14-cv-8185(AJN), 2016 WL 4767577, at *13 (S.D.N.Y. Sept. 12, 2016). Plaintiff does not develop this argument, and instead focuses on the fact of the transfer itself as the adverse employment action. In any case, this argument fails because, as discussed above, Plaintiff has not established a hostile work environment claim.

repeatedly states that she was provided the "Hobson Choice" of transferring to SNAP 13.[4] Accordingly, Plaintiff's Title VII, Section 1983, and NYCHRL claims fail and Defendants are granted summary judgement on these claims.

### b.   NYCHRL Retaliation Claim

A plaintiff is not required to show "a material adverse action" under the NYCHRL. Instead, a plaintiff can prove her claim by showing that she "took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted). As with Title VII and NYSHRL, however, "the NYCHRL require[s] a causal connection between an adverse act and a protected activity to prove a retaliation claim." *Dudley v. N.Y.C. Hous. Auth.*, No. 12-cv-2771(PGG), 2014 WL 5003799, at *25 (S.D.N.Y. Sept. 30, 2014).

Plaintiff does not provide a defense of her NYCHRL retaliation claim. In discussing her retaliation claims, she mentions the NYCHRL in one broad sentence regarding Defendants' representation of her protected activities. Pl.'s Br. 5 ("Again, in an effort to avoid addressing Plaintiff's retaliation claims under Title VII, SHRL, and CHRL, Defendants omit Plaintiff's extensive protected activities under these statutes."). Plaintiff offers no more on this claim. Accordingly, the Court infers from Plaintiff's partial opposition that the undefended NYCHRL retaliation claim is abandoned. *See Jackson*,766 F.3d at 198.

### c.   First Amendment Retaliation Claim

A finding of retaliation in violation of the First Amendment freedom of speech guarantee must be established on narrower grounds than a retaliation finding under Title VII. "A plaintiff

---

[4] In her deposition, Plaintiff stated that there were other opportunities available when she first requested to be transferred, but only one option, SNAP 13, remained available by the time her transfer was approved. Regardless of whether positions were in fact available when she first requested a transfer, she admits that the SNAP 13 position was the only open post at the time of transfer. Hagan Decl. Ex. 1, at 105:11-107:3.

asserting a First Amendment retaliation claim must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotation marks and citations omitted). Whether the speech of a public employee is protected from retaliation by the First Amendment involves two inquires: "(1) whether the employee spoke as a citizen on a matter of public concern; and if she did, (2) whether the government had an adequate justification for treating the employee differently from any other member of the general public." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citations omitted). The first step requires a determination of "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee." *Matthews*, 779 F. 3d at 172 (internal quotation marks and citations omitted).

Plaintiff's First Amendment claim fails because the subject of the speech was not a matter of public concern. Speech is a matter of public concern if it relates to a matter of political, social, or other concern of a community. *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003). "[A] speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 170 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

In the context of her First Amendment claim, Plaintiff only addresses the AFIT Proposal and petition as the protected speech at issue.[5] While Plaintiff states that she proposed AFIT to

---

[5] Plaintiff criticizes Defendants for only considering the AFIT Proposal and petition under her First Amendment claim, however she then fails to provide or discuss other activities that fall under this claim. Pl.'s Br. 4.

address OCSE staff's experiences and to serve as a "'safeguard' to the Grievance, EEO, EAP and Disciplinary Charges process," Plaintiff's AFIT Proposal largely consists of a recounting of Plaintiff's own negative experiences at OCSE. *See* Baskin Decl. Ex. K., at PDC0315, ECF No. 199-11. In Plaintiff's brief, Plaintiff alleges that she proposed AFIT to address "HRA's failure to deliver services in a non-discriminatory and efficient fashion." Pl.'s Br. 4. Yet, the proposal itself does not mention discrimination, but rather describes the proposed agency as "an intervention for workers suffering from Psychological Abuse." Baskin Decl. Ex K., at PDC0311, ECF No. 199-11.

As "a generalized public interest in the fair or proper treatment of public employees is not enough to transform a personal grievance related to the conditions of one's employment into a matter of public concern," Plaintiff's First Amendment claim fails. *Golodner v. Berliner*, 770 F.3d 196, 204 (2d Cir. 2014) (quoting *Ruotolo,* 514 F.3d at 190).  Accordingly, Defendants are granted summary judgment on Plaintiff's First Amendment claim.

### d.  Aiding and Abetting NYCHRL and NYSHRL Claims

Under the NYCHRL and the NYSHRL, a defendant may be liable for aiding and abetting the employer if that individual participated in the discriminatory or retaliatory conduct. *See Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). Plaintiff must first establish that the defendant employer discriminated or retaliated against her. *See Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999). As the Court has granted summary judgment on Plaintiff's retaliation and discrimination claims, the aiding and abetting claims cannot stand.

### V.    *Monell* Liability

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality is only liable under Section 1983 where the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). Thus, to successfully lodge a claim against a municipality for the actions of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). A plaintiff can make such a showing, by demonstrating, for example, that [1] a practice of municipal officials was "so persistent or widespread as to constitute a custom or usage with the force of law, or, [2] that a practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quoting *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992)). In the absence of an official policy, *Monell* liability can also attach based on a single decision by a municipal policymaker so long as a plaintiff can show (1) "that the official had final policymaking power;" (2) that the challenged action was within the "official's area of policymaking authority;" and (3) that the policymaker had "final authority," meaning that "his decisions, at the time they are made, may fairly be said to represent official policy." *City of Waterbury*, 542 F.3d. at 37(internal quotation marks and citations omitted).

Plaintiff's *Monell* claim involves Defendants' alleged failure to handle the appeals of her disciplinary charges and Defendants' failure to address her internal complaints. Pl.'s Br. 17–18. As explained above, Plaintiff has failed to establish that the individual defendants deprived her of any constitutional right. Additionally, Plaintiff has not established the constitutional right that was violated by Defendants' alleged failure to address her appeals and internal complaints. Further,

Plaintiff has presented no evidence of a municipal policy or custom, nor has she adequately alleged the involvement of individuals with final policymaking power. Accordingly, the Court grants Defendants' motion for summary judgment on these claims.

**VI.    Stigma-Plus Claim**

Plaintiff's opposition brief also raises a stigma-plus claim and a request for a name clearing hearing. "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010) This claim was raised for the first time in her summary judgment opposition and therefore fails.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motion at Docket No. 198 and to close this action.

**SO ORDERED.**
**Dated:** March 30, 2022
      New York, New York

                            **ANDREW L. CARTER, JR.**
                            **United States District Judge**